Robert D. MANNING et al., Appellants,

v.

The STATE of Texas, Appellee.

No. 11546.

Court of Civil Appeals of Texas.

Austin.

Dec. 13, 1967.

Rehearing Denied Jan. 24, 1968.

Carl Raymond Crites, San Antonio, Kuykendall & Kuykendall, Austin, for appellants.

Crawford C. Martin, Atty. Gen., George M. Cowden, A. J. Carubbi, Jr., Staff Legal Asst. Attys. Gen., Sam Kelley, Larry Craddock and Ralph R. Rash, Asst. Attys. Gen., Austin, for appellee.

O'QUINN, Justice.

The Attorney General of Texas brought this suit in March, 1965, in the name of the State and at the instance of the Commissioner of Insurance, the Secretary of State, and the Comptroller of Public Accounts, to oust an insurance operation conducted by appellants in the name of a foreign corporation, and for receivership and injunction.

The petition presented a case in the nature of a quo warranto against American Travelers Insurance Company, Ltd., Robert D. Manning and David McConnell of Travis County and Willis Burge of Dallas County.

The trial court granted a temporary restraining order and appointed a temporary receiver the day suit was filed, March 16. On March 26 the trial court continued in force the terms of the order and receivership, with modifications. This action was taken with agreement of appellants Manning and McConnell, and of Burge, who has not appealed. The corporation made no appearance.

The case was heard on its merits April 29 and 30, 1965. Judgment was entered nearly two years later, on March 21, 1967.

Manning and McConnell have appealed from final judgment, assigning eight and eleven points of error, respectively.

We overrule all points of error and affirm the judgment of the trial court.

The Attorney General in filing suit alleged that Manning and McConnell were engaged in the insurance business, in the name of American Travelers Insurance Company, Ltd., without a certificate of authority from the State of Texas. The petition further alleged that Manning, McConnell, and Burge, acting together and

severally, were using the corporate fiction to perpetrate a fraud and evade the laws of Texas. The Attorney General asserted that Manning, McConnell and Burge had rendered themselves individually and personally liable for their acts performed in the name of the corporation, including evasion of fees, taxes, penalties and forfeitures due the State.

The prayer was for injunction to restrain the illegal operations of Manning, McConnell and Burge, and for receivership of records, properties and bank accounts of the corporation. The suit also sought statutory penalties and taxes, jointly and severally, against the company, Manning, McConnell and Burge.

The American Travelers Insurance Company, Ltd., had been organized under the laws of the island of New Providence, in Nassau, Bahamas. Robert D. Manning was president of the corporation, with Frederick Gerding as its vice president and Mrs. A. R. Manning its secretary-treasurer. Its charter appears to have authorized the corporation to deal in gold bullion, conduct salvage operations, to act as promoter, manufacturer, or trader, and to engage in numerous other activities related to stocks, bonds, debentures, property, securities, and safe deposits, as well as insurance.

In the latter part of 1964 the corporation, with Manning acting for it, made contracts with McConnell and with Burge, under which insurance would be written in the name of the corporation but all claims would be paid by these agents.

Under his contract, McConnell kept seven-eighths (87½ percent) of all premiums collected. He obligated himself to pay all claims and judgments arising "from contracts solicited in the name" of American Travelers. McConnell agreed to "set up a reserve account" in a bank of his choice "of at least 50% of all premiums received by" him. McConnell sent all other monies to Manning in Austin. McConnell solicited and received applications from other agents for insurance with American Travelers.

Policy forms were furnished McConnell by Manning, in lots of fifty, already signed by Manning for American Travelers Insurance Company, Ltd. An office was maintained for American Travelers in the Brown Building in Austin, and a telephone in the corporation name was installed. Cancellation of policies was effected by Manning and McConnell acting together. McConnell testified he paid claims against American Travelers.

The record shows that neither Manning, McConnell, nor Burge had certificates of authority to engage in the insurance business in Texas as insurers in the name of American Travelers Insurance Company, Ltd. American Travelers did not hold a certificate of authority in Texas through either the Secretary of State or the State Board of Insurance.

Manning was a witness at the trial. When asked whether he was "familiar with the American Travelers Insurance Company, Limited," and if he knew "what it is," Manning replied, "Yes, sir."

The next question and Manning's answer were:

"Q Now tell the Court, if you can, please, sir, who organized the company.

"A Sir, I claim protection under the Fifth Amendment of the Constitution of the United States and under the Constitution of the State of Texas, and respectfully refuse to answer on the grounds that the answer may tend to incriminate me."

When asked whether he had served as president of the corporation, Manning again invoked protection under the Fifth Amendment. In some 12 pages of testimony Manning refused 17 times to answer questions on the ground that his answer might tend to incriminate him. The last question Manning refused to answer was an inquiry as to whether he knew "the name of the lawyer who prepared the charter for the American Travelers Insurance Company, Limited." His reply was, "I will invoke the Fifth Amendment."

In this appeal the appellants are Manning and McConnell. The trial court rendered judgment against the American Travelers Insurance Company, Ltd., Robert D. Manning and David McConnell, jointly and severally, in the amount of $5,700 as penalty "for writing casualty insurance and for engaging in the casualty insurance business as a carrier without a certificate of authority." Similarly, judgment in the amount of $100 was rendered against Willis Burge, Manning, and the corporation. Neither Burge nor the corporation has appealed.

The trial court entered judgment against McConnell in the sum of $436.29 for taxes and penalty, plus interest, growing out of his failure to account to the State for taxes from funds held by him in the name of the corporation.

The court appointed a permanent receiver for all property of the corporation, with authority to wind up its affairs, and permanently enjoined the corporation, Manning, McConnell, and Burge from operating any insurance business as a carrier without first obtaining a certificate of authority.

The points of error under which McConnell and Manning attack the judgment of the trial court will be considered generally in the order McConnell presents his eleven assignments. Manning presents eight points, all of which are also found under McConnell's contentions, and all points will be considered together.

McConnell, by point of error one, and Manning, by point five, contend that the trial court was without authority to appoint a receiver of American Travelers Insurance Company, Ltd., because the corporation was not domiciled in Texas and there was no evidence the company was insolvent.

■ These points are not tenable and must be overruled. American Travelers is not an appellant in this cause, and McConnell and Manning are not entitled to appellate review of a final judgment against the corporation, as they have no justiciable interest. United States v. Ray Thomas Grav-el Co., 380 S.W.2d 576 (Tex.1964); 3 Tex. Jur.2d, Appeal and Error—Civil, sec. 196, pp. 468–9.

Even if McConnell and Manning could establish an interest in the judgment against American Travelers, we do not understand the law to be that a court may not appoint a receiver, with instructions to impound the property of a foreign corporation within this State, without a showing that the corporation is insolvent or is in imminent danger of insolvency. 49 Tex.Jur.2d, Receivers, sec. 61, pp. 82–85.

The State sued to stop an unlawful insurance operation and alleged its cause in detail. The State alleged equitable grounds of mismanagement, fraud and evasion of taxes, as well as a studied and complete defiance of corporation, insurance, and tax laws of Texas.

At the trial it was shown that the entire receipts collected by McConnell from the sale of insurance in the name of American Travelers were divided between McConnell and Manning. No premiums were sent to the company in Nassau. No applications were sent to the company for approval. Money collected in this operation was placed in the bank accounts of McConnell and Manning. The premium receipts, taxes and other charges collected by McConnell on this business were placed by him in the accounts involved in this lawsuit. Manning at first placed his part of the receipts, which was one-eighth (12½ percent), in an American Travelers account, from which the money was soon transferred to his personal account. No funds remained in the company name. McConnell claims he owns the accounts. Under this contention, nothing would be available by which the company could pay liabilities under policies issued, or pay taxes due the State. McConnell collected money for the taxes but never paid taxes to the State.

Under the plan McConnell and Manning followed, McConnell allowed and paid agents' commissions, made refunds, cancelled policies, decided what risks to take,

and what claims to pay. Every aspect of the insurance business in the name of American Travelers Insurance Company, Ltd., was conducted in Texas by McConnell, and nothing was referred to Nassau. McConnell was in fact the insurer, operating the business in concert with Manning, who, like McConnell, kept his part of the premium receipts for his own personal use.

We think the State clearly alleged and convincingly proved that the operation McConnell and Manning carried on was a strategem and circumvention to evade the laws of this State and to practice a fraud.

■■ The trial court, having before it a cause of action stated and proved in the nature of quo warranto to oust an illegal insurance scheme, could in its discretion appoint a receiver auxiliary to the suit that constituted the independent cause. Greenland v. Pryor, 360 S.W.2d 423 (Tex.Civ. App., San Antonio, no writ); Parker v. American Sulphur and Fertilizer Co., 3 S.W.2d 124 (Tex.Civ.App., Waco, no writ). Under the facts and circumstances presented in this case, it is our opinion that the trial court did not abuse its discretion in appointing the receiver, and we decline to disturb this action by the court. Jones v. Springer, 256 S.W.2d 1016 (Tex.Civ.App., Amarillo, no writ); San Angelo Hilton Hotel Co. v. B. B. Hail Building Corporation, 60 S.W.2d 1049 (Tex.Civ.App., Austin, no writ).

McConnell contends under points of error two, three and four that there was no evidence and insufficient evidence that funds in the Trinity National Bank of Dallas belonged to American Travelers Insurance Company, Ltd., and that the trial court erred in holding that the funds did not belong to McConnell.

The accounts in Trinity National Bank were named in the order of the trial court, dated April 6, 1965, by which temporary injunction was imposed and a temporary receiver was appointed. McConnell and Manning both agreed to this order.

We do not find that ownership of these accounts was made an issue in the pleadings, nor was ownership adjudicated in the final judgment upon which this appeal is predicated. It would appear that to establish title to any funds, accounts, or property in the hands of the receiver, McConnell should assert his claim in an action other than the one now on appeal.

■ This suit was instituted by the State to oust an illicit insurance operation and to place the operation and its assets in receivership, as well as to collect taxes due the State and hold the operators for statutory penalties. If the receiver is holding property belonging to McConnell, the claim must be presented in another lawsuit. It is not an issue in this case.

We overrule McConnell's points of error two, three and four.

McConnell under three points of error (five, six and seven) and Manning under two points (six and seven) contend in effect that an unauthorized insurance carrier can do business in Texas under Article 21.38 of the Insurance Code, V.A.T.S. without a certificate of authority, and that the business carried on by McConnell and Manning came within the terms of this statute.

The purpose of Article 21.38, as expressed in the statute itself, "is to regulate the placing of policies or contracts, effecting direct insurance, with certain non-authorized insurers, and to subject certain unauthorized insurers to the jurisdiction of courts of this State * * *" (Article 21.38 was repealed by the Legislature, effective May 12, 1967, by Acts 1967, 60th Leg., ch. 185, secs. 2, 4, p. 400, and unauthorized insurance is now regulated under Article 1.14–1 and 2, Insurance Code, effective with repeal of Article 21.38).

Article 21.38, as enacted in 1951, was based on Article 5068e, Vernon's Ann.Civ. Sts., without substantive change. (Acts 1949, 51st Leg., ch. 617, p. 1355; Acts 1951, 52nd Leg., ch. 491; amended Acts 1957, 55th Leg., ch. 395, p. 1180). The Legislature in

section 1 of Article 21.38 expressly declared its intent to provide "a regulation as to the placing of such direct lines of insurance in such unauthorized companies."

■ We believe that under the statute the Legislature intended that certain qualified agents were authorized to act as a broker or agent for residents of this State to secure coverage from unauthorized insurers. We do not understand the statute to permit agents or brokers to become insurers themselves or to act as agent of the unauthorized insurer requested to supply the coverage.

Section 3 of Article 21.38 specifies acts not permitted and permissible acts of agents. The section reads as follows:

"Nothing contained in this article shall authorize any person, firm, association, or corporation *to guarantee or otherwise validate or secure the performance or legality of any agreement, instrument or policy of insurance of any insurer not licensed to do business in Texas, nor to permit or authorize any nonlicensed insurer to do any insurance business by or through any person or agent acting within this State*; but agents licensed hereunder acting pursuant to this article may issue and deliver *to their clients, the insured*, binders, policies and other confirmation of direct insurance so lawfully placed, and *shall not be personally liable* to the holder of any policy of insurance so issued or delivered for any loss covered by same." (Emphasis added.)

McConnell's contract with American Travelers Insurance Company, Ltd., with respect to liability under the policies, provided the following:

"It is hereby agreed that any policy or policies written by [McConnell] * * * and/or any of [McConnell's] * * * subsidiaries that they will be liable for any and all liability under said policy and that the [American Travelers Insurance Company, Ltd.] * * * nor any of its officers, directors, or heirs will be liable for any said liability under contracts solicited by [McConnell] * * * It is further agreed that [McConnell] * * * will set up a reserve account in the bank of [his] * * * choice of at least 50% of all premiums received by [McConnell] * * * for the payment of claims which arise from contracts solicited by [McConnell] * * * or [his] * * * subsidiaries, and from this account it is further agreed that [McConnell] * * * will pay all claims, judgments, or legal costs which may arise from contracts solicited in the name of the [American Travelers Insurance Company, Ltd.]. * * *"

The evidence shows that except for the money sent Manning (12½ percent of the premiums), McConnell retained all premium money. No applications for insurance were submitted to American Travelers. McConnell did not negotiate with American Travelers in behalf of any policyholder. No claims under the policies were submitted to American Travelers. All applications were approved by McConnell and he paid the claims, without consultation with American Travelers. Although McConnell collected premiums in the name of American Travelers, the money never left his control, and he signed checks and paid claims out of these funds.

The five percent tax which McConnell collected on the business he wrote in the name of American Travelers was placed in McConnell's "All Risks Auto Insurance Brokers Account." Although Article 21.38 requires that taxes collected must be remitted to the State within thirty days after January 1, the taxes McConnell collected were still in his possession when this lawsuit was filed on March 16, 1965.

The acts performed by McConnell and Manning were functions normally carried on by an insurer. There was nothing we can find in the record to show that either McConnell or Manning acted as broker or excess agent on behalf of residents of this

State seeking insurance to be written and guaranteed by a non-admitted insurance company. McConnell and Manning in effect placed American Travelers in the State of Texas, and they were the company itself for all practical purposes.

McConnell relies upon Board of Insurance Commissioners v. Kansas City Title Insurance Company, 217 S.W.2d 695 (Tex. Civ.App., Austin, writ ref., n. r. e.) under the contention that McConnell's contract with American Travelers "was one of indemnity," and that the contract "does not in any manner lessen the liability of American Travelers. * * *"

In that case this Court construed a contract between one Hexter and the Kansas City Title Insurance Company to be " * * one of agency and the fact that it provides for reimbursement to the Title Company from Hexter for loss is *indemnity for the failure of the agent to be diligent and careful in the exercise of the authority conferred by the contract*, and, as such, is a legal consideration therefor." (217 S.W.2d 695, 697, col. 2)

If McConnell insists he was an agent for American Travelers, under authority of the Kansas City Title case, supra, he admits to violation of Article 21.38, the statute he invokes. The rule of the Kansas City Title case will not aid McConnell in the role of broker for insured persons under Article 21.38.

Hexter contracted to indemnify Kansas City Title, but this Court recognized that the Title Company had not by this contract relieved itself of liability to the policyholder, and that the public was buying insurance from the Title Company and not from Hexter. (217 S.W.2d 695, 698, col. 1)

■ The McConnell contract purported to relieve American Travelers of all responsibility. McConnell assumed all liability to the policyholder. This was not a contract of indemnity. It was a means by which McConnell could solicit insurance in the name

of American Travelers, use its forms, and keep all money collected except the 12½ percent paid to Manning. McConnell could use the name American Travelers, but in all other respects McConnell was the insurer. Whatever the designation of the relationship between McConnell and American Travelers, we conclude that McConnell and Manning in fact acted as partners to conduct an insurance business in the name of American Travelers Insurance Company, Ltd. The business they conducted was that of insurers acting without certificate of authority from the State of Texas.

McConnell (under points eight and nine) and Manning (under points one, two, and eight) attack the trial court's judgment in assessing penalties against them under Article 8.18, par. C, of the Business Corporation Act, V.A.T.S., and Article 8.16 of the Insurance Code.

■■ We consider it settled law in this State that where a corporation is used by individuals in control of it as a mere dummy for their operations, the corporate veil may be pierced to effect justice and to hold the managers personally responsible. Five Star Transfer and Terminal Warehouse Corporation v. Flusche, 339 S.W.2d 384 (Tex. Civ.App., Texarkana, writ ref., n. r. e.); O'Neal v. Jones, 34 S.W.2d 689 (Tex.Civ. App., Dallas, no writ).

The State has invoked several statutes in pursuit of its cause in the nature of a quo warranto action. Under Articles 6253 and 6257, Vernon's Ann.Civ.Sts., persons or associations of persons found to be acting as a corporation without being legally incorporated may be fined by the court. Article 8.16 of the Insurance Code provides penalty of $100 a day against companies writing casualty insurance without certificate of authority. Article 8.18, par. C, of the Business Corporation Act allows penalties of $100 to $5,000 a month for corporations doing business in this State without authority.

 The trial court found suitable and proper the penalties assessed against McConnell and Manning. Trial was before the court, and no findings of fact were filed or requested. All issues of fact will be presumed to have been found in such way as to support the judgment. U. S. Truck Lines v. Texaco, Inc., 337 S.W.2d 497, (Tex.Civ. App., Eastland, writ ref.); Construction and General Labor Union, etc. v. Stephenson, 148 Tex. 434, 225 S.W.2d 958; 4 Tex. Jur.2d, Appeal and Error—Civil, sec. 806, p. 329 et seq.

We deem it unnecessary to discuss the facts further or to cite additional authority. To allow the doctrine of a corporate entity to intervene under the facts of this case to excuse or absolve the individuals would be to convert a court of justice into a gazing-stock. We are unwilling to disturb the penalties imposed upon McConnell and Manning by the trial court.

Under points ten and eleven McConnell contends that the trial court erred in entering judgment against him for taxes and interest, in violation of due process, and that the claim for taxes was not pleaded by the State.

 We do not agree that the State failed to plead its claim for taxes. The joint and several liability of McConnell and Manning for taxes, growing out of their illicit operation, was pleaded repeatedly by the State. The State's prayer specifies taxes and asks for general relief. No exception was leveled at the State's plea for taxes, and if there was a defect in the pleadings, the defect has been waived. Rule 90, Texas Rules of Civil Procedure.

It is undisputed that McConnell collected $349.02 in premium taxes from policyholders and failed to pay the taxes to the State. Payment was delinquent when suit was filed. No objection was made by McConnell or Manning to the introduction of the testimony offered to prove collection and retention of the taxes by McConnell.

In fact, part of the testimony was elicited from McConnell himself, without objection.

 In contending now that he should not be required by the court to deliver to the State the taxes collected by him from the policyholders, McConnell places himself in the untenable position of claiming he is entitled to keep the money because it was collected by him as an illegal tax. If there is any controversy with respect to legality of the tax, McConnell certainly has no justiciable interest in the dispute. McConnell does not stand in the place of the taxpayer. 44 Tex.Jur.2d, Parties, sec. 7, p. 145 et seq.

We do not find merit in these points of error and overrule them.

The judgment of the district court is affirmed.

Affirmed.