Jack McClendon, Greg Teeter, Lubbock, Tex., for defendants-appellants.

Patrick F. McManemin, Donna R. Morris, McManemin & Smith, Dallas, Tex., for plaintiff-appellee.

**ADMIRAL INSURANCE COMPANY,**
Plaintiff–Appellee,

v.

**BRINKCRAFT DEVELOPMENT, LTD.**
**and Delbert G. McDougal,**
Defendants–Appellants.

No. 90–1531
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Jan. 22, 1991.

Before JOLLY, HIGGINBOTHAM, and JONES, Circuit Judges.

PATRICK E. HIGGINBOTHAM,
Circuit Judge:

Delbert G. McDougal and Brinkcraft Development appeal the district court's conclusion that a New York choice of law provision in a promissory note was enforceable under Texas law. Because we find that the note bore a reasonable relation to New York, we affirm.

I.

On December 15, 1985, Delbert G. McDougal, a general partner of Brinkcraft Development, executed and delivered to San Angelo Investors Limited Partnership a promissory note in which McDougal and Brinkcraft promised to pay San Angelo the principal sum of $250,600 together with interest at a rate of thirteen percent per annum. McDougal is a Texas resident, and Brinkcraft a Texas partnership with principal offices in Texas. Although San Angelo is a Texas limited partnership formed to own the limited partnership interests in a

second Texas limited partnership, San Angelo Associates Limited Partnership, that owns Texas property, San Angelo does have some contacts with New York. One of San Angelo's general partners, Richard A. Acito, is a resident of New York, and the other, Lubbock Associated Realty Corporation, is a Texas corporation with principal offices in New York. In addition, San Angelo's Amended and Restated Certificate and Agreement of Limited Partnership states that its principal place of business is the shared office of its two general partners, a specified New York address, "or at such other place as the General Partners may, from time to time, designate."

The parties negotiated and executed the note in Texas. Four of its provisions are particularly relevant to this appeal. The interest provision, which McDougal and Brinkcraft claim is usurious under Texas law, provides as follows:

> Interest shall be paid in arrears on the first day of March of each year commencing on March 1, 1986 and ending on March 1, 1990. However, notwithstanding the foregoing, the interest accruing for calender year 1985 and payable on March 1, 1986, shall be not less than $6,981.00.

A choice of law provision specifies that the note is to be governed and controlled "by the statutes, laws and decisions of the state in which the Partnership, as Payee of this instrument, maintains as Principal Place of Business" and that the note was "submitted to the Payee at its Principal Place of Business and shall be deemed to have been made thereat." Although San Angelo's Limited Partnership Certificate allows the general partners to redesignate its principal place of business at any time, a separate provision of the note specifies San Angelo's principal place of business as the same New York address set forth in the Limited Partnership Certificate. Finally, the payment provision states that payments are to be made at the New York address designated as San Angelo's principal place of business.

Admiral Insurance Company, the plaintiff below, acquired the note and brought suit against McDougal and Brinkcraft when they defaulted on March 1, 1988. McDougal and Brinkcraft then filed an answer and counterclaim in which they plead usury both as an affirmative defense and as a ground of recovery. Both parties moved for summary judgement, and the district court granted summary judgement to Admiral on the note and dismissed the counterclaim. In its memorandum opinion and order, the district court explained that the parties' choice of law provision was enforceable under Texas law because the transaction bore a "reasonable relation" to New York. Under New York law, there is no maximum interest rate for notes over $250,000. N.Y.GEN.OBLIG. § 5–501.6.a (McKinney 1989). After the district court denied McDougal's and Brinkcraft's motion for a new trial, they appealed to this court.

## II.

Because the note is not usurious under New York law, the central issue in this appeal is whether the note's New York choice of law provision is enforceable under Texas law. Texas courts evaluate choice of law provisions by two separate standards, one for transactions governed by the Uniform Commercial Code and the other for transactions governed by Texas common law. *Uniwest Mortg. Co. v. Dadecor Condominiums, Inc.*, 877 F.2d 431, 433 (5th Cir.1989). McDougal and Brinkcraft do not dispute the district court's determination that the note is a negotiable instrument governed by Chapter 3 of the UCC, TEX.BUS. & COM.CODE ANN. § 3.104 (Vernon 1990). Thus, our starting point is the UCC choice of law provision:

> Except as provided hereafter in this section, when a transaction bears a reasonable relation to this state and also to another state or nation, the parties may agree that the law either of this state or of such other state or nation shall govern the rights and duties. Failing such agreement this title applies to such transactions bearing an appropriate relation to this state.

TEX.BUS. & COM.CODE § 1.105(a) (Vernon 1990).

McDougal and Brinkcraft argue that the note does not bear a reasonable relation to New York, that the note's contacts with New York are subterfuges designed to evade Texas usury law, and that the note's choice of law provision is unenforceable because it contravenes Texas public policy. All three contentions are foreclosed by our opinion in *Woods–Tucker Leasing Corporation of Georgia v. Hutcheson–Ingram Development Company*, 642 F.2d 744 (5th Cir.1981), a case that the appellants curiously omitted from their first brief and failed to distinguish in their reply brief. *Woods–Tucker* involved two contracts structured as a sale and lease-back of farm equipment but intended as a loan secured by the farm equipment; both contracts contained Mississippi choice of law provisions. The borrower argued that the choice of law provisions were unenforceable, and the interest provisions usurious, under Texas law. Texas clearly had the most significant contacts with the transaction—the borrower was a Texas partnership conducting business in Texas, the lender also conducted some business in Texas, the borrower initiated the loan in Texas, and the farm equipment was at all times located in Texas. By contrast, Mississippi's only contacts with the transaction arose from the facts that the lender, a Georgia corporation, maintained its principal offices in Mississippi, the parties finally executed the loan in Mississippi, and the borrower initially made payments in Mississippi. We concluded, however, that Mississippi's contacts were sufficient to constitute a "reasonable relation" to the transaction within the meaning of § 1.105(a). *Id.* at 750.

In reaching this conclusion, we emphasized that the UCC attempts to achieve uniformity in multistate transactions through the principle of party autonomy. *Id.* at 751. Thus, parties to multistate transactions may include choice of law provisions in their contracts as long as the law chosen bears some relation to the transaction. In describing the "reasonable relation" test, we drew substantially from *Seeman v. Philadelphia Warehouse Co.*, 274 U.S. 403, 47 S.Ct. 626, 71 L.Ed. 1123 (1927), also cited in the Comment to § 1.105(a).

*Seeman* involved a loan contract between a Pennsylvania lender and a New York borrower that was usurious under New York law. The contract contained no choice of law provision, but provided for repayment in Pennsylvania. The Supreme Court emphasized its policy of "upholding contractual obligations assumed in good faith" and stated that parties can contract for the higher rate of interest when there is a disparity in interest rates at the place of contract and place of performance. *Id.* at 407–08, 47 S.Ct. at 6. The Court qualified this rule, however, by noting that parties cannot willfully evade or avoid the usury laws otherwise applicable by "entering into the contract or stipulating for its performance at a place which has no normal relation to the transaction and to whose law they would not otherwise be subject." *Id.* at 408, 47 S.Ct. at 6. We relied on this passage in concluding that the "reasonable relation" test of § 1.105(a) limits party autonomy only to the extent that it forbids parties to choose the law of a jurisdiction with "no normal relation to the transaction." *Woods–Tucker*, 642 F.2d at 751. *See also Davidson Oil Country Supply v. Klockner*, 908 F.2d 1238, reversed in part on rehearing on other grounds, 917 F.2d 185 (5th Cir.1990).

*Woods–Tucker* compels us to conclude that New York bears a reasonable relation to the note now held by Admiral. First, both of San Angelo's general partners are located in New York. One is a New York resident, and the other a Texas corporation with principal offices in New York. Second, the note and San Angelo's Limited Partnership Certificate both state that New York is San Angelo's principal place of business. McDougal and Brinkcraft argue that San Angelo's principal place of business is actually Texas because San Angelo was formed solely for the purpose of owning the limited partnership interests in a Texas limited partnership that, in turn, was formed solely for the purpose of owning Texas property. However, the fact that San Angelo maintains its principal offices in New York gives New York some relation to the note; we do not need to decide

whether New York is also San Angelo's principal place of business. McDougal and Brinkcraft also argue that this contact is contrived because the Limited Partnership Certificate allows San Angelo's general partners to redesignate its principal place of business at any time. Again, however, we find it significant that San Angelo has maintained its principal offices at the same New York address since its formation. Finally, McDougal and Brinkcraft made payments on the note at San Angelo's principal offices in New York, as expressly required by the note. McDougal and Brinkcraft also argue that this third contact is contrived, but we think it reasonable and natural that San Angelo chose its principal offices as the place of payment. We agree with McDougal and Brinkcraft that the fourth contact cited by Admiral and the district court, a provision in the note stating that it is deemed to have been made in New York, is not a real contact to New York because the note was actually negotiated and executed in Texas. However, we believe that the first three contacts suffice to create a reasonable relation to New York.

*Woods–Tucker* also forecloses McDougal's and Brinkcraft's second and third arguments. In rejecting the borrower's contention that the Mississippi choice of law provision was a contrivance to evade Texas usury law, we stated that:

> The [contrivance exception] is designed only to preclude the evasion or avoidance at will of the usury laws that would otherwise apply, by empowering the courts to ignore a party choice that would apply the law of a jurisdiction with no normal relation to the transaction ... In short, the [exception] is nothing more than a restatement of the basic UCC choice of law rule. . . .

*Id.* at 753. *Building & Loan Ass'n of Dakota v. Griffin*, 90 Tex. 480, 39 S.W. 656 (1897), cited extensively by McDougal and Brinkcraft, is distinguishable because it was a pre-UCC case, it did not involve an express choice of law provision, and there were no real contacts outside Texas. *See Woods–Tucker*, 642 F.2d at 752–53.

In *Woods–Tucker*, we also noted that applying Mississippi usury law would not offend any fundamental Texas public policy. We could find no Texas cases invalidating a choice of law provision on the ground that applying the chosen state's usury law would violate Texas public policy, and thus concluded that:

> [W]e would see the absence of such holdings in Texas cases as a reflection that Texas seeks to balance the policy of national commercial uniformity embodied in the UCC against the parochial self-defense embodied in the state usury laws. The choice of law provision set out in [§ 1.105(a)] embodies the balance that is struck.

*Id.* at 753 n. 13.

We note in closing that our opinion in *Woods–Tucker* has not been undercut by any subsequent Texas cases. In fact, one Texas appellate court cited *Woods–Tucker* with approval in holding that an Illinois choice of law provision was enforceable under § 1.105(a). *See Mostek Corp. v. Chemetron Corp.*, 642 S.W.2d 20, 24 (Tex. App.—Dallas 1982, no writ). In *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670 (Tex. 1990), the Supreme Court of Texas held that a Florida choice of law provision in a noncompetition agreement was not enforceable under Texas law because Texas had greater interests in the transaction than Florida and the agreement violated Texas public policy. However, *DeSantis* was decided under common law principles not § 1.105(a), and noncompetition agreements implicate an arguably stronger Texas public policy than usurious contracts.

AFFIRMED.