IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 92-5084

---

AMERICAN STAR INSURANCE CO.,
f/k/a Classified Insurance
Corporation,

                                    Plaintiff-Appellee,

                    versus

ROBERT F. GIRDLEY and
VIRGINIA L. GIRDLEY,

                                    Defendants-Appellants.

---

Appeal from the United States District Court
for the Eastern District of Texas

---

(January 10, 1994)

Before HIGGINBOTHAM, DAVIS, and SMITH, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

       We hold that an agreement requiring the agent of a bail bond company to indemnify the company is not an illegal reinsurance contract under Texas law.

I

       Robert F. Girdley and Virginia L. Girdley agreed to act as agents of American Star Insurance Company[1] in the bail bond business.  The contract required the Girdleys to indemnify American Star for any loss incurred on a bail bond issued by the Girdleys on

---

       [1]  At the time of the contract, the insurance company's name was Classified Insurance Company.  The company later changed its name to American Star Insurance Company.

American Star's behalf.  American Star here sued the Girdleys under the indemnification provision.

Both American Star and the Girdleys moved for summary judgment, the motions turning on whether the indemnification provision is an insurance contract.  If it is, the Girdleys argued, then the agreement was void because the Girdleys were not licensed as insurers.  This is their only defense on appeal.

The district court applied Texas law in granting summary judgment for American Star, despite a provision in the agreement specifying California law as controlling.  The court concluded that the indemnity provision was incidental to the agency agreement and therefore that it did not require the Girdleys to provide insurance.  As a result, the agreement was enforceable.[2]  From this judgment, plaintiffs timely appeal.

## II

We must first answer the choice of law question.  We hold that district court did not err in applying Texas law.

As Texas provided the legal forum for this federal diversity case, the choice of law rules of Texas govern.  Caton v. Leach Corp., 896 F.2d 939, 942 (5th Cir. 1990).  The Texas Supreme Court has adopted section 187 of the Restatement (Second) of Conflict of Laws (1971) to determine the validity of contractual choice of law

---

[2]  After the district court entered final judgment, the Girdleys asked that the court amend its findings pursuant to Fed.R.Civ.P. 52(b) to reflect the fact that the bail bond business was not the Girdleys' but, rather, was American Star's. The district court made this alteration but nevertheless held that American Star was entitled to summary judgment.

provisions. <u>DeSantis v. Wackenhut Corp.</u>, 793 S.W.2d 670, 677 (Tex. 1990), <u>cert. denied</u>, 498 U.S. 1048 (1991). According to Section 187 of the Restatement, a choice of law provision applies if the parties could have "resolved by an explicit provision in their agreement" the issue in dispute. <u>Id.</u> at 677 (citation omitted). As the issue before the court is whether the indemnification agreement is unenforceable as a matter of law, the parties could not have resolved the claim by agreement.

Nevertheless, the choice of law provision will generally govern, with two exceptions. First, California, as the "chosen state," must have some substantial relationship to the parties or the transaction, or there must be some other reasonable basis for the parties' choice. <u>Id.</u> at 678 (citing Restatement (Second) of Conflict of Laws § 187(a) (1971)). American Star claims that its principal place of business is in California and therefore that it has a substantial relationship to the state. Judging this contention is not necessary to our decision. <u>But see Admiral Ins. Co. v. Brinkcraft Development, Ltd.</u>, 921 F.2d 591, 593-94 (5th Cir. 1991) (interpreting UCC, not Texas common law, as requiring application of New York law where party's principal place of business in New York and receipt of payments in New York established "a reasonable relation" to the state).

Second, if the dispute involves the fundamental policy of Texas, if Texas has the most significant relationship to the transaction and the parties, and if Texas has a materially greater interest in the dispute than California, then the laws of Texas

3

will apply.  <u>DeSantis</u>, 793 S.W.2d at 678-79 (citing Restatement (Second) of Conflict of Laws § 187(b)).  This second exception governs the case before us.  As we noted, the only relationship between the circumstances of this dispute and the chosen forum is that American Star's principal place of business is in California. In contrast, the Girdleys served as agents in Texas, they issued bonds in Texas, and the criminal proceeding behind the Girdleys' potential liability was in Texas.  Texas has the most significant relationship to this case and has a materially greater interest in it than California.

As resolution of this dispute implicates laws pertaining to insurance, it also affects a fundamental policy of Texas.  The Texas Supreme Court recently held, "The State of Texas has special interest in regulating... insurance."  <u>Guardian Royal Exch. Assur. Co. v. English China Clays, P.L.C.</u>, 815 S.W.2d 223, 229 (Tex. 1991).  It made this observation in assessing the requirements for exercising jurisdiction over a nonresident defendant.  Given the importance of Texas' regulatory interest in insurance, the court allowed "a lesser showing of minimum contacts than would otherwise be required."  <u>Id.</u>  The Texas legislature has indicated its interest in insurance not only by heavy regulation of the industry but also, in particular, by placing special requirements on reinsurance transactions involving insurers not licensed to do business in Texas.  <u>See, e.g.,</u> Tex. Rev. Civ. Stat. Ann. art. 3.10A (Supp. 1994) (requiring special contractual commitments by an out-of-state reinsurer before the in-state insurer may receive credit

in its accounting and financial statements). By protecting policyholders in Texas in a way that places burdens on insurance companies in other states, the legislature has made manifest its fundamental policy interest in the insurance and reinsurance businesses. Texas law therefore controls.

## III

We hold that the indemnification provision was incidental to the lawful agreement that the Girdleys would serve as American Star's agents. It therefore did not constitute, or transform the agreement into, an illegal insurance contract. As a result, we need not decide whether providers of bail bonds are in the insurance business or, alternatively, whether a party may shirk its commitments by claiming that it has acted illegally.

All parties agree that the Girdleys could lawfully serve as agents of American Star in the bail bond business. The question is whether the Girdleys' indemnification of American Star qualifies as reinsurance. We note at the outset that "when a contract is susceptible of two constructions the construction which makes it legal and valid will be adopted." Board of Ins. Com'rs v. Kansas City Title Ins. Co., 217 S.W.2d 695, 697-98 (Tex. Civ. App. Austin 1949, writ ref'd n.r.e.).

We recently interpreted Texas law as establishing that "one party to a contract for services is not an 'insurer' of the other party to the contract solely because the first party indemnifies the second party pursuant to an indemnity clause." Vesta Insurance Co. v. Amoco Production Co., 986 F.2d 981, 985 (5th Cir.), cert.

5

*denied*, 114 S.Ct. 80 (1993). This court relied in <u>Vesta</u> on <u>Board of Ins. Com'rs</u>. <u>Vesta</u>, 986 F.2d at 986 n.12 (citing <u>Board of Ins. Com'rs v. Kansas City Title Ins. Co.</u>, 217 S.W.2d 695 (Tex. Civ. App. Austin 1949, writ ref'd n.r.e.)). In <u>Board of Ins. Com'rs.</u>, the court addressed an indemnification provision in a contract between a vendor of title abstracts and a provider of title insurance. The vendor agreed to serve as the title insurance company's agent. The indemnification provision held the vendor liable to the title insurance company for obligations arising from the policies the vendor sold on the insurance company's behalf. If the indemnity provision was a reinsurance contract, it violated Texas law by enabling the vendor to act as an unlicensed insurer. The court held that the provision was not a reinsurance contract but rather was incidental to the agency relationship. <u>Id.</u> at 697-98.

In reaching this conclusion, the court looked to the likely effect on the "public interest" of invalidating the indemnification agreement. <u>Id.</u> at 698. By tracing the court's reasoning, we heed the stated purpose for enacting the statute requiring the licensing and regulation of bail bondsmen, that is, regulation of "a business affecting the public interest." Tex. Rev. Civ. Stat. Ann. art. 2372p-3 §1 (Supp. 1994). <u>See also Board of Ins. Com'rs</u>, 217 S.W.2d at 698 ("Title insurance is a business affected by public interest and subject to legislative control").

The court in <u>Board of Insurance Commissioners</u> noted that the indemnification provision neither allowed the vendor to "hold

itself out as engaging in the insurance business" nor caused people to "rely upon the responsibility" of the vendor. 217 S.W.2d at 698. A Texas court addressing a similar issue noted that in Board of Ins. Com'rs the title company "had not by [the] contract relieved itself of liability to the policyholder, and that the public was buying insurance from the [insurer] and not [the vendor]." Manning v. State, 423 S.W.2d 406, 412 (Tex. Civ. App. Austin 1967, writ ref'd n.r.e.) (citing Board of Ins. Com'rs, 217 S.W.2d 695, 698 (Tex. Civ. App. Austin, writ ref'd 1949 writ ref'd n.r.e.)). The court in Manning seized on the fact that the agent before it had "assumed all liability to the policyholder" whereas the agent in Board of Ins. Com'rs had not. For this reason, the Manning court found that the agent had provided insurance and had not merely formed "a contract of indemnity." Id.

The same distinction applies to the present case. The Girdleys could, and did, present themselves only as American Star's agents. By the terms of the agreement, American Star acted "as surety for bail bonds solicited in its name." The Girdleys do not claim that American Star could have avoided its obligations as a result of the indemnification provision. That provision was a purely private agreement between American Star and the Girdleys. It would be ironic if in an effort to protect an unwary government institution or member of the public, neither of which had reason to rely on the Girdleys as bail bondsmen, we were to keep American Star from enforcing the Girdleys' obligations. The court in Board of Ins. Com'rs rejected this approach to distinguishing between

7

indemnification and reinsurance.  <u>Board of Ins. Com'rs</u>, 217 S.W.2d at 698 (treating an indemnity provision as an illegal insurance contract would be error where it would expose to risk parties that the law was designed to protect).  No interest that Texas might wish to protect would be served by allowing the Girdleys to escape liability.

AFFIRMED.