**JETT RACING & SALES, INC., et al., Plaintiffs,**

v.

**TRANSAMERICA COMMERCIAL FINANCE CORPORATION, et al., Defendants.**

Civ. A. No. L-92-120.

United States District Court, S.D. Texas, Laredo Division.

April 25, 1995.

Order Denying Reconsideration May 17, 1995.

Charles R. Borchers, Person Whitworth Ramos Borchers & Morales, Laredo, TX, for Jett Racing & Sales.

Jan R. Thurman, Thurman Harrison & Steck, Arlington, TX, Charles R. Borchers, Person Whitworth Ramos Borchers & Morales, Laredo, TX, for Wolf Hofman, Susana Hofman.

Paul Gallegos, Laredo, TX, Beverly D. Mason, Keck Mahin & Cate, Houston, TX, for Commercial Finance Corp.

## MEMORANDUM AND ORDER

KAZEN, District Judge.

Pending is Defendant Transamerica's opposed motion for partial summary judgment, addressing that portion of Plaintiffs' complaint charging usury arising out of a "floor plan" financing agreement existing between the parties. The agreement, dated September 2, 1988, is labeled an "Inventory Security Agreement and Power of Attorney" ("the Agreement"). It provides, among other things, that Plaintiff Jett may obtain credit from Transamerica to finance the acquisition of goods for resale. The Agreement provides for the creation of a security interest in Jett's inventory, accounts, and equipment. It provides that Jett shall pay all current and future extensions of credit and all financing charges, and provides how the payments will be applied. Paragraph 15 of the Agreement expressly provides that in the event of default, Transamerica shall have all rights under the Uniform Commercial Code together with other contractual rights. The critical provision for purposes of the pending motion is Paragraph 21. That paragraph, in bold type provides:

"The validity, enforceability and interpretation of this Agreement and any promissory notes taken, charges made and sums paid in connection herewith shall be governed by the laws of the State of Illinois, the principal place of business of the Secured Party."

Transamerica relies on this provision to invoke the laws of Illinois, while Jett claims that Texas law applies.

This Court's decision is squarely controlled by the case of *Admiral Insurance Co. v. Brinkcraft Development, Ltd.*, 921 F.2d 591 (5th Cir.1991). There the Fifth Circuit held that Texas courts evaluate choice-of-law provisions "by two separate standards, one for transactions governed by the Uniform Commercial Code and the other for transactions governed by Texas common law." *Id.* at 592.

■ Any transaction in which the parties intend to create a security interest in personal property or fixtures falls within Chapter 9 of the U.C.C. *Southern Rock, Inc. v. B & B Auto Supply,* 711 F.2d 683, 685 (5th Cir.1983); TEX. BUS. & COM. CODE § 9.102(a)(1) (1991). The Agreement executed by the parties clearly falls under the U.C.C. Plaintiffs' contrary argument is not entirely clear. They assert that Jett was unaware of the choice-of-law provision. This assertion is apparently based on the affidavit of Wolf Hofman, who simply states that he did not "realize that the laws of Illinois might apply." The choice-of-law provision, however, is clearly set forth in the Agreement; in fact it appears on the signature page. While the present suit attacks the validity of a later settlement agreement between the parties, there is no claim that the original 1988 Agreement was procured by any fraud or mistake.

■ Plaintiffs also suggest that there is no bold face choice-of-law provision in any promissory note. As noted by Transamerica, however, no promissory note was required to effectuate the agreement between the parties. This was a floor plan agreement whereby credit was extended periodically as requested. The Agreement was expressly designed to apply "to all debts, liabilities and obligations of the Debtor to Secured Party . . . presently existing or hereafter arising or created." Agreement, Paragraph 4.

■ Finally, at page 10 of its original response to the motion, Plaintiffs intimate that the *Admiral Ins. Co.* case was wrongly decided. That proposition, however, must be addressed to the Fifth Circuit Court of Appeals, the decisions of which are binding on this Court.

This Court concludes that the 1988 Agreement between the parties and the resulting debt obligation that it created were clearly governed by the U.C.C. Accordingly, the choice-of-law provision contained in the Agreement is binding so long as the law chosen "bears some relation to the transaction." *Admiral Ins. Co.,* 921 F.2d at 593.

The Plaintiffs spend much effort attempting to show the extensive contacts which this transaction had with the State of Texas. Indeed, as was also true in *Admiral Ins. Co.,* "Texas clearly had the most significant contacts with the transaction." *Id.* Nevertheless there as here, that is not the question. Instead the question is only whether the transaction bore "some relation" to Illinois. This rule "attempts to achieve uniformity in multistate transactions through the principle of party autonomy." *Id.* Plaintiffs' recitation of the many Texas contacts with this transaction ignores the foregoing principle of "party autonomy." That is, the 1988 Agreement was made at arms length between two sophisticated business entities. In that agreement they—not this Court or anyone else—chose to apply the law of Illinois to any dispute. The salutary principle of the U.C.C. simply recognizes that the parties' own choice should be honored "except where it would be unreasonable to do so." *Woods– Tucker Leasing Corp. v. Hutcheson–Ingram,* 642 F.2d 744, 751 (5th Cir.1981). It would not be unreasonable to do so here.

■ Transamerica's principal place of business is in Illinois, which itself gives Illinois "some relation" to the transaction. *Admiral Ins. Co.,* 921 F.2d at 593. Moreover, the money to fund Jett's purchases came from an Illinois bank. All of Transamerica's cancelled checks were maintained in Illinois and the bank statements were reconciled on a computer there. Jett's payments in Texas were daily deposited in Illinois banks. Some monthly statements sent to Jett were prepared in Illinois. These contacts were clearly ample to prevent Illinois from being an "unreasonable" choice of the parties. To repeat, the point is not whether Texas had much more contact with the transaction, but whether there were enough contacts with Illinois to prevent the parties' own choice from being unreasonable. Jett having voluntarily signed an agreement expressly providing for application of Illinois law, it is irrelevant to now claim that Jett was unaware of some or all of the transaction's contacts with Illinois.[1]

1. The Court has considered the Second Affidavit of Victor Vasquez, filed December 13, 1993, and

concludes that its contents do not change the result reached in this Memorandum. Trans-

■ Finally, Jett maintains that Texas has a fundamental public interest in protecting its residents from usury, and that this policy should affect the choice-of-law provision. That contention is squarely rejected by *Admiral Ins. Co.*, 921 F.2d at 594. That case also forecloses Plaintiffs' effort to rely on *DeSantis v. Wackenhut, Corp.*, 793 S.W.2d 670 (Tex.1990), which was specifically distinguished in *Admiral Ins. Co.* Plaintiffs have cited no later Texas cases casting any doubt on the holding in *Admiral Ins. Co.* Therefore, as explained earlier, this Court is compelled to follow a decision of the Fifth Circuit Court of Appeals.

For the foregoing reasons, Transamerica's Motion for Partial Summary Judgment is GRANTED against all Plaintiffs on the usury issue. The parties are DIRECTED to confer forthwith and file a joint status report on or before May 10, 1995, outlining what issues remain pending and presenting a plan for timely disposal of those issues.

*MEMORANDUM AND ORDER*
*ON RECONSIDERATION*

Pending is Plaintiffs' motion for reconsideration of the Court's order of April 25, 1995. Plaintiffs' primary contention is that a "subsequent" Texas appellate decision must cause this Court to disregard the opinion of the Fifth Circuit Court of Appeals in *Admiral Insurance, Co. v. Brinkcraft Development, Ltd.*, 921 F.2d 591 (5th Cir.1991). The Court disagrees.

Plaintiffs point to the case of *State Nat. Bank v. Academia, Inc.*, 802 S.W.2d 282 (Tex.App.—Corpus Christi, 1990). In footnote one to their motion, Plaintiffs assert that the "decision date" of this case is January 10, 1992. Presuming Plaintiffs meant 1991 rather than 1992, the fact is that the *Academia* case was decided October 31, 1990. A motion for rehearing was overruled January 10, 1991. Plaintiffs claim that an unidentified "Linda" at West Publishing Company advised that the *Academia* decision was published in March 1991. Even accepting the reliability of this hearsay assertion, it does not address whether the opinion was publish-

ed in any other manner on or after October 31, 1990.

Much more importantly, there is nothing in the *Academia* opinion that would justify this Court's disregarding the opinion of the Fifth Circuit Court of Appeals. It is true that the *Academia* court cited *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670 (Tex.1988) as being controlling authority in what appears to be a U.C.C. case, even though *DeSantis* clearly was not a U.C.C. case. Nevertheless, *Academia* set forth this test:

"The law of the state expressly agreed to between the parties will be applied if there is a reasonable relationship between the parties and the chosen state, and the law of the chosen state is not contrary to a fundamental policy of this state."

802 S.W.2d at 289.

■ The first part of that test—the "reasonable relationship" test—is the same test utilized by the Fifth Circuit in *Admiral Ins. Co.* and by this Court in its earlier order. Plaintiffs continue to compare contacts between Texas and Illinois, arguing that Texas is the "only state" bearing a reasonable relationship to this transaction. The Court repeats its earlier holding that merely because Texas clearly has more contacts does not mean that Illinois has no contacts and therefore is an unreasonable choice of law. *Cf. Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 484 n. 26, 105 S.Ct. 2174, 2188, n. 26, 85 L.Ed.2d 528 (1985) (in a minimum-contacts context, two or more states may be interested in the outcome of a dispute).

The second prong of the *Academia* test is whether the law of the chosen state is contrary to a fundamental policy of this state. Neither *Academia* nor *DeSantis* were usury cases and therefore cannot stand for the proposition that another state's interest laws are contrary to a fundamental policy of this state. The Fifth Circuit in *Admiral Ins. Co.* specifically stated: "We could find no Texas cases invalidating a choice of law provision on the ground that applying the chosen state's usury law would violate Texas public policy ..." 921 F.2d at 594. Be it an earlier or

america's motion to strike the affidavit (Docket No. 40) is DENIED. Other filings concerning

this affidavit (Docket Nos. 37, 41 & 42) are DENIED as moot.

later decision, *Academia* does not contradict the quoted statement, nor does the language quoted at page 6 of the pending motion purporting to represent "the position of supporters" of recent Texas legislation which, if applied, would apparently yield the same result as that announced in the April 25 order.

For the foregoing reasons, the motion for reconsideration is DENIED. The parties have submitted a status report indicating that both sides propose to consume countless hours and even more money taking depositions in this case. Before they do so, since this is a commercial dispute between two presumptively reasonable commercial entities, the Court believes that a good-faith attempt at mediation, or even arbitration, should first be attempted. The parties are DIRECTED to confer immediately and file a joint response to this proposal no later than May 25, 1995.