### GULF INS. CO. v. WHITE et al.
### No. 14381.

Court of Civil Appeals of Texas. Dallas. July 20, 1951.

Rehearing Denied Sept. 28, 1951.

Dee Brown Walker and John Fox Holt, both of Dallas, for appellant.

Leachman, Matthews & Gardere, and Henry D. Akin, Jr., all of Dallas, for appellees.

BOND, Chief Justice.

This suit was instituted by the plaintiff Charles Ray Sims against the defendants James H. White and Charles White, jointly and severally, for damages to plaintiff's automobile as the result of a collision between his car and a truck belonging to Charles White; the truck alleged to have been negligently operated by James H. White, agent, servant and employee of Charles White, while in the course of his employment and in furtherance of the business of said owner. Subsequently, Gulf Insurance Company, a corporation, intervened, adopted the pleadings of the plaintiff for all pertinent purposes as to causation of damage and liability of the defendants; and specially alleged that on October 17, 1948 it issued to Charles Ray Sims a

Texas standard policy of insurance covering "any loss or damage to his automobile" as the result of any collision to the amount of actual "cash value, less $50.00 deductible." That on account of said collision the Company had paid to the plaintiff for repairs to his automobile the amount of $309.91, and, in consideration of said payment, the insured executed and delivered to it an assignment of damages against the defendants, "less the sum of $50.00 deductible."

The defendants filed separate answers to plaintiff's and intervener's petitions, denied liability, and specially alleged that the plaintiff was guilty of contributory negligence and that after said collision and before any assignment to the intervener had been made by the plaintiff of any claim he may have had against them, they had paid to Sims the sum of $50 in full satisfaction for all damages he had sustained as the result of said collision; and that the said Sims agreed and bound himself not to look further to the defendants, or either of them, for any additional amount of damage which he might have sustained. In consequence, the defendants were fully and finally released from any and all liability as the result of said collision. The defendants further alleged that it was thus understood and agreed between them and the plaintiff Sims that said payment of $50 was in compromise and full settlement of all claims in dispute.

Prior to the trial the plaintiff Charles Ray Sims took a nonsuit without prejudice to his rights in the premises, and likewise as to the Gulf Insurance Company's plea of intervention. After the plaintiff was dismissed from the suit the cause was tried to a jury and at the conclusion of intervener's evidence, on defendant's motion, the trial court peremptorily instructed the jury to return a verdict in favor of the defendants and that the intervener take nothing by its suit. Accordingly the court entered judgment in favor of the defendants Charles White and James H. White, from which judgment this appeal is presently prosecuted by the intervener, as appellant, against the defendant James H. White.

The sole point of error raised by appellant is that "The trial court erred in instructing a verdict for defendant James White"; countered by appellee James H. White that, "The trial court was correct in instructing a verdict for James White." The appellant raises no issue as against appellee Charles White (owner of the truck in question); hence as to him the judgment will be affirmed without further consideration. The appeal being prosecuted by intervener as appellant, against James H. White, they will be here respectively designated as appellant and appellee.

Appellant's cause of action is based upon the claim of the insured Sims against James H. White, upon subrogation as the insurer of Charles Ray Sims for any loss to his automobile by collision to amount of "actual cash value, less $50 deductible," perforce of the provisions of the insurance policy which are as follows: "In the event of any payment under this policy the company shall be subrogated to all the insured's rights of recovery therefor against any person or corporation and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights"; and, also, perforce of an executed assignment by the insured of his claim against defendants in the amount of $309.91.

The record evidence shows that on March 12, 1949 the insured's automobile was damaged as the result of a collision with a truck belonging to Charles White, then being operated by James H. White. On March 21, 1949 appellee James H. White executed and delivered to Charles Ray Sims (the insured) a check in usual bank form in the sum of $50, drawn on his account at Irving State Bank, Irving, Texas, which check was subsequently cashed by Sims. The check on its face recited: "This check is in full settlement of account as shown herewith. Acceptance by endorsement constitutes acceptance in full." Just below the above recital is the word, "Damage." This appeal hinges on the legal effect of said check and the endorsements thereon, received by Sims on account of said collision, as a full settlement of all

claims which the insured may have had against James H. White.

Charles Ray Sims testified: "I received the check, the word 'damage' was on it. * * * Some printing." That he endorsed the check, cashed it and got the money.

"Q. You knew what you were doing when you endorsed the check, didn't you, Mr. Sims? A. I knew I was signing the check, I didn't know what all it was at that time.

"Q. Did you read it? A. The check?

"Q. Yes, sir. A. No, sir: I read the amount.

"Q. When did you cash the check? A. I believe it was the night he gave it to me; * * *.

"Q. Did anyone prevent you from reading the check either while he was there or before you cashed it? A. No, sir.

"Q. You just cashed it? A. Yes, sir. * * *

"Q. Did you ask him for the fifty dollars? A. No, sir.

"Q. You didn't ask him for it? A. No, sir.

"Q. You just told him about it, and expected him to take the initiative, is that right? A. That's right. * * *

"Q. You told him that you had insurance? A. Yes, sir.

"Q. Did you tell him that your policy was fifty dollar deductible collision? A. Yes, sir.

"Q. And you intended by that to say that you would be willing to accept fifty dollars, didn't you? A. Yes; well, no, not that way. * * *

"Q. You accepted it voluntarily, didn't you? A. Yes, sir."

The collision occurred at an intersection of State Highway 67 and a cross-road. The operator of the truck entered the intersection from the cross-road going east, and Mr. Sims' automobile was traveling south. The contact of the two motor vehicles occurred on the east side of the Highway, striking the left-hand side of the truck. Mr. Sims testified:

"Q. Is it your testimony that he was in the intersection either slightly ahead of you or at approximately the same time you were? A. Approximately the same time.

"Q. And he was on your right, wasn't he? A. Yes, sir.

"Q. He was approaching the intersection from your right, wasn't he? A. From my right, yes. * * *

"Q. Where was the point of collision with reference to an imaginary line, or an imaginary point where the center of each of these roads would intersect? * * * A. It was approximately on the left side, about even with it, I had pulled over there to try to miss the truck. * * *

"Q. Did you have the car repaired? A. Yes, sir. * * *

"Q. Who paid for the repairs? A. I got a check from the Gulf Insurance Company.

"Q. Did you have insurance on your car? A. Yes, sir. * * *

"Q. And you accepted the check from him in the amount of fifty dollars because you were out fifty dollars, is that right? A. Yes, I thought I would be out only fifty dollars on it.

"Q. Did he represent to you that you would be out only fifty dollars on it, or did you just believe that you would be out only fifty dollars on it? A. That's what I thought.

"Q. That's what you thought? A. Yes.

"Q. Did he represent to you that you would be out just the fifty dollars? A. No, sir, I don't think so.

The undisputed evidence shows that the Gulf Insurance Company was entitled to maintain suit under the terms of its policy in its own behalf, it being subrogated to the rights of the plaintiff Sims. An insurance contract is a contract of indemnity, and it is well settled that if a loss is occasioned, by the wrongful act of a third person, covered by the terms of the insurance policy, the insurer is subrogated to the rights and remedies of the insured, and may maintain an action against the third party, either in the insured's name, or in its own name. Hudson Underwriters

Agency of Franklin Fire Ins. Co. v. Ablon, Tex.Civ.App., 203 S.W.2d 584, writ ref. In the case here, if the appellee James H. White was, in fact, liable for damage to the insured's automobile, which is a question of fact, the question presented is: Does the acceptance by Sims of White's check for $50, which recited for "Damage," and given " * * * in full settlement of account as shown herewith. Acceptance by endorsement constitutes acceptance in full," defeat the insurance company's right of subrogation against White? The check was accepted by the insured, endorsed by him, before the insurance company had paid the loss to the insured. There is no pleading or evidence that the check was given by White, accepted by Sims, in fraud of the insurance company's right of subrogation. If the acceptance of the check by Sims has the effect of "full settlement," as would defeat a cause of action by Sims for further damages to his automobile, in absence of fraud, or collusion between White and Sims against the insurance company, the insured had effectively waived all right of action that he might have had against the Company for further damages. Only where the insured has a claim, or cause of action against the wrong-doer, may the insurer acquire right of subrogation. The insurer's action "in event of payment" is against the insured under the terms of the policy.

In the case of Washington National Ins. Co. v. Cook, Tex.Civ.App., 80 S.W.2d 327, 328, an insurance company obtained a release from its insured, which release, as here, was printed on a draft. The Eastland Court of Civil Appeals, opinion by Chief Justice Hickman, held that when the insured negotiated a draft for $50, which stated on its face, "in full payment, satisfaction, discharge and release of any and all claims", he was precluded by the settlement agreement from suing the insurance company for the $3,000 damage actually suffered by him and which would have been covered by the policy. The Court concluded as a matter of law that the release was supported by consideration. In support of the Court's holding, the following cases are cited: Great Southern Life Ins. Co. v. Heavin, Tex.Comm.App., 39 S.W.2d 851; Inter-Ocean Casualty Co. v. Johnston, 123 Tex. 592, 72 S.W.2d 583.

In the case of Connell v. Provident Life & Accident Ins. Co., 148 Tex. 311, 224 S.W.2d 194, the insured accepted, endorsed and cashed a draft which had words releasing the insurer written thereon. The Supreme Court stated that intent of the parties was a matter of law for the Court, rather than for the jury, and that the release was, as a matter of law, not procured by fraud, and was binding on the parties. In the case here, the settlement was made by White and Sims about two days after the collision; the appellant's right of subrogation was effective only by the payment of loss for any claim that Sims had at time of payment. The appellant acquired no right of subrogation since Sims had effectively settled his claim and released his cause of action not only as against White, but against the insurance company, as well. Thus appellee White having been released from liability, Sims had no assignable interest against him as a basis for appellant's subrogated contract.

We are of the opinion that the question here presents one of law, hence appellant's general point of error as to the action of the trial court is overruled. Judgment affirmed.