**GULF INSURANCE COMPANY,**
Appellant,

v.

**TEXAS CASUALTY INSURANCE COMPANY, Appellee.**

No. 18085.

Court of Civil Appeals of Texas,
Fort Worth.

April 12, 1979.

Rehearing Denied May 10, 1979.

Lang, Cross, Ladon, Boldrick & Green, and Allan K. Dubois and Stephen Lang, San Antonio, for appellant.

Hilgers, Watkins & Hays and David W. Hilgers, Austin, for appellee.

## OPINION

MASSEY, Chief Justice.

Gulf Insurance Company has appealed from a take nothing judgment entered following trial before the court without intervention of a jury of its suit against Texas Casualty Insurance Company.

We affirm.

We will later discuss the issues between the parties upon Gulf's contention that there had been a waiver by Texas Casualty of right to rely upon the provisions of its insurance policy to defeat the claim against it, and upon estoppel to rely thereon. We will first state and discuss the meaning and validity of the provisions. Incidentally, the very same provisions upon which Texas Casualty relies are likewise to be found in the policy of Gulf Insurance Company.

The claim by Gulf was not originally its own. The claim upon which it declared by its suit was transferred to it and subrogated and assigned on October 14, 1971. The

subrogation instrument was executed by Glastron Boat Company, and by one Bewell W. Plant, Jr., who at all times material was the truck driver for Glastron.

Pursuant to proceedings by method of friendly suit, with judgment rendered on November 10, 1971, Gulf, for the benefit of Glastron and Plant, settled a case of great potentiality as to liability and damages as result of the death of a man by the name of Junior W. Roberts. The potential tort liability of Glastron and Plant was outgrowth of a collision on or about July 1, 1971. Plant was driving a truck, rented by Glastron from a truck rental company. In the State of Kentucky he caused or allowed the same to come into collision with another truck in which Mr. Roberts was occupant. Because of the force of the collision Roberts suffered injuries resulting in his death.

On the occasion of that collision the insurance policy of Gulf was in force and effect upon the rented truck; the insurance policy of Texas Casualty was no doubt in force and effect upon the semi-trailer being towed, it being the property of Glastron and containing its products. (Whether Gulf's policy was or was not in force is immaterial to disposition of its suit against Texas Casualty.)

The "no action" clause in the Texas Casualty policy:

"ACTION AGAINST COMPANY: No action shall lie against the company, unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of the policy, *nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company. . . .* " (Emphasis supplied.)

The "subrogation" clause contained in the Texas Casualty policy provides:

"Subrogation: In the event of any payment under this policy the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. *The insured shall do nothing after loss to prejudice such rights.*" (Emphasis supplied.)

It is upon the two provisions aforesaid in the policy of Texas Casualty Insurance Company, in particular the language of each clause which we have lent emphasis, that said insurance company defended the suit, originally that of Glastron Boat Company and its driver, and by subrogation and assignment become the claim of Gulf Insurance.

It was by the identical subrogation clause in its own policy of insurance that Gulf Insurance Company (which settled and extinguished the claims against Glastron and Plant growing out of the fatal collision of July 1, 1971, upon the theory that Gulf did in fact insure them against liability under its policy) sought and obtained execution of the subrogation agreement. It is plain from the record that Gulf, at and prior to the time such settlement, knew that a dispute existed between Gulf and Texas Casualty upon the matter of which of the two companies was the correct insurer of Glastron and Plant. The conclusion of the trial court, by which we hold such court not to have erred, was that Gulf, (being unable to obtain the agreements it desired from Texas Casualty immediately prior to the time it effected settlement of the potential liability of Glastron and Plant), chose of its own volition to proceed and accomplish the settlement. In its presentation to the trial court and to this court Gulf showed that it chose to "place a ceiling" on the amount anticipated to eventually become the subject matter of the dispute. That dispute concerned which company stood contractually bound, or, in the event a right of either to compel contribution from the other, the correct amounts each company was obligated to pay in making the total of the settlement amount paid by Gulf.

■ Texas Casualty Insurance Company, absent waiver or estoppel, was entitled to rely upon and to have its acquittal of liabili-

ty under the "no action" clause of its policy covering Glastron and Plant. There not having been any *actual trial,* and the parties having contracted that Texas Casualty should have no liability by its policy until the obligation to pay on the part of those insured by the policy had been finally determined by judgment against it or them after *actual trial,* the insurance ceased as subject matter which might be demanded. On this the evidence showed that disposition was by "friendly suit", i. e., though by judgment rendered by a court of competent jurisdiction following a hearing, upon a hearing for the purpose of examining the issues upon liability and damages *in the determination of whether to approve the agreement upon disposition brought to the court by the parties,* and not for the purpose of litigating the same issues in the event the court withheld its approval. The evidence established as a matter of law that what occurred was such a "friendly suit", and one wherein the proposed agreed settlement was approved, and, as approved, made the judgment of the court.

On the above, this court, on a prior occasion, passed upon the question of whether a friendly suit was an "actual trial", though not in the context of the contractual provision in an insurance policy. Our holding was that by such procedure there was not a case litigated, whether the proposed settlement presented to the trial court be approved or disapproved, pointing out that, if not approved, the character of the case would change and become one ripe for trial upon a truly adversary proceeding. *Brightwell v. Rabeck,* 430 S.W.2d 252 (Tex.Civ.App.—Fort Worth 1968, writ ref'd n. r. e.).

There has been like holding in a case involving the construction of a "no action" clause in an insurance policy; the term "actual trial" having been deemed a condition precedent to the prosecution of a suit upon the policy contract. *Wright v. Allstate Insurance Co.,* 285 S.W.2d 376, 378 (Tex.Civ.App.—Dallas 1955, no writ).

By our holding hereinabove, there would be support of our action affirming the judgment. However, an affirmance would be likewise required by the provisions of the "subrogation" clause in the Texas Casualty policy. Therein is provided for the subrogation rights to be possessed by Texas Casualty Insurance Company in the event it should make any payment under other of the provisions of the policy; and further, that "the insured shall do nothing after loss to prejudice said rights." Noted is that Glastron Boat Company and its employee Plant, as "insureds" under the policy of Gulf Insurance Company, signed the instrument transferring their rights, whatever they might be, to Gulf. In turn Gulf predicated its suit against Texas Casualty upon the rights subrogated to it by Glastron and Plant.

The breach of the policy condition in the contract of Glastron and Plant with Texas Casualty precludes a recovery by Gulf, as their assignee. *Gulf Ins. Co. v. White,* 242 S.W.2d 663 (Tex.Civ.App.—Dallas 1951, no writ); *Millers Mutual Fire Ins. Co. of Tex. v. Mitchell,* 392 S.W.2d 703 (Tex.Civ.App.—Tyler 1965, no writ); *Foundation Reserve Insurance Company v. Cody,* 458 S.W.2d 214 (Tex.Civ.App.—Dallas 1970, no writ). All of these cases were suits on individual policies by the insured against his insurer, after the insured had foreclosed ability of the insurer to have the subrogation rights against third persons who might be responsible in damages to the insured. Nevertheless the identical legal principle exists by the circumstances now under consideration: if the insurer which has contracted that it is to receive the rights to subrogation is denied that for which it contracted by the action of its insured there is material breach by the insured; and because of the breach the benefit otherwise applicable or payable to him may not be enforced against the company.

Upon occurrence of the collision on July 1, 1971, which resulted in the fatal injury to Mr. Roberts, Gulf Insurance Company made its investigation. It is not clear whether Texas Casualty made any investigation, though it was rather fully informed by Gulf. Gulf had discovered that all claims could be settled for an amount it considered

desirable, no matter which company might be compelled to assume the ultimate liability. Gulf was, of course, interested in favorably settling the claim with funds provided by both insurers. Settlement conferences were held between the attorneys for Texas Casualty and Gulf, but to no avail.

October 7, 1971, Texas Casualty advised Gulf by letter that "it would be in order for your company to proceed to make such settlement as it feels to be indicated under the facts without any assistance or permission from this Company."

October 11, 1971 Gulf demanded that Texas Casualty assent to the reasonableness of a proposed settlement of $200,000.00 "without prejudice to questions of coverage to be later determined" and gave Texas Casualty forty-eight hours to give such assent, or be liable for all costs of settlement and expenses. Texas Casualty never made any response to the letter. Gulf decided to proceed and to accomplish the settlement.

October 14, 1971, Glastron and Plant entered into a subrogation agreement with the Gulf Insurance Company. This was because of Gulf's decision to proceed and accomplish the settlement, deferring for later conclusion its dispute with Texas Casualty upon the question of insurance "coverage".

November 2, 1971 suit was filed by the estate of Junior Roberts against Bewell W. Plant, Jr. and Glastron Boat Company in the United States District Court, Northern District of Indiana for $250,000.00. November 8, 1971, the estate of Junior W. Roberts received authority from the Elkhart, Indiana Superior Court to compromise the wrongful death claim.

November 9, 1971 an answer was filed in the federal suit on behalf of defendants Plant and Glastron, denying liability. November 10, 1971, was heard the merits of that case. The trial judge heard testimony, reviewed documentary evidence pertaining to liability and damages, made a specific finding that Plant was negligent, that Roberts was not, and that the plaintiffs had suffered actual and pecuniary loss in the amount of $205,000.00. November 10, 1971,

judgment was rendered reflecting the court's findings. The amount was that all parties represented to the court as consented by them.

July 11, 1972, Gulf filed suit against Texas Casualty praying for recovery, under its subrogation rights, the amount it had paid in settlement, its expenses attendant thereto, interest from date of the settlement payment, and court costs.

On the issues of estoppel and waiver it was incumbent that Gulf present evidence and secure findings of fact that Texas Casualty had either waived the defenses we have held valid or had so conducted itself that it should be held estopped to rely upon them. Except for execution of the October 14, 1971 subrogation assignment, on none of the occasions listed above, from October 7, 1971 to November 10, 1971 when the judgment was rendered in the friendly suit, was there any participation by either Glastron or Plant. Neither does it appear that Texas Casualty was ever advised that the friendly suit was filed, scheduled to be heard, or heard, until after all the proceedings incident to settlement stood fully accomplished. Texas Casualty had notified Gulf that if it effected settlement it would be "without any assistance from" Texas Casualty.

Gulf was unable to persuade the trial court to make any findings it desired upon the matters of Texas Casualty's waiver and estoppel; indeed the court made findings to the contrary of those desired.

The case was submitted largely upon facts stipulated, together with documents. There were issues raised, but they are to be deemed as concluded against Gulf. We have examined the evidence and we cannot find that the findings of the trial court were contrary to the greater weight and preponderance of the evidence. Complaints presented relative thereto are without merit and are therefore overruled.

Gulf's final point of error is complaint because the trial court overruled its motion to disqualify the attorney representing Texas Casualty and in refusing to order such attorney to turn over to Gulf papers, docu-

ments and pertinent files. There was a hearing antecedent to the trial from which there is the appeal upon Gulf's motion to disqualify, etc. There was not a record made and brought forward of the evidence at that hearing. For this reason the point would be properly overruled. However, we actually need not predicate our decision upon such ground for in any event the complaint is immaterial to the issues proper to be reviewed upon the appeal.

Judgment is affirmed.