# HIGHLANDS INSURANCE COMPANY

v.

## NEW ENGLAND INSURANCE COMPANY, et al.

### No. 04–90–00707–CV.

Court of Appeals of Texas, San Antonio.

June 19, 1991.

Susan Stone, John Milano, Jr., Thornton, Summers, Biechlin, Dunham & Brown, Inc., San Antonio, for appellant.

George H. Spencer, James A. Hoffman, Clemens & Spencer, San Antonio, Thomas F. Nye, Gerald D. McFarlen, Brin & Brin, P.C., Corpus Christi, Angelo G. Savino, Charles M. McCaghey, Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for appellees.

Before PEEPLES, CARR, and GARCIA, JJ.

PEEPLES, Justice.

This summary judgment appeal arises from the same fact situation involved in the companion case decided this day. *See* 811 S.W.2d 272 (1991). Two excess insurance carriers—Highlands Insurance Company and a group of insurers referred to as the New England Group[1]—claim monies recovered by their insured from its co-defendants and their insurers in suits for wrongful failure to defend and provide coverage. The main issue is whether the insured tortfeasor's first-level excess insurance carrier (Highlands) or its third-level excess carrier (the New England Group) is entitled to the money. The second-level insurer, Hartford Accident & Indemnity Company, has not appealed. The trial court rendered summary judgment for New England. We affirm.

The underlying dispute arose in 1983 and 1984 when several plaintiffs brought suit for damages resulting from injuries and deaths caused by a product called E–Ferol, which was manufactured by certain Revco companies and Carter–Glogau Laboratories and distributed by O'Neal, Jones & Feldman, Inc. (now O'Neal, Inc.). The manufacturers and their insurers refused to provide a defense for O'Neal, their distributor. Ultimately, O'Neal and its insurers settled with the plaintiffs and then recovered some of their settlement payments through two different methods: (1) Mary Carter agreements with the plaintiffs, by which the plaintiffs paid O'Neal part of the damages

---

1. The New England Group consists of four companies: New England Insurance Company (successor of New England Reinsurance Company), Landmark Insurance Company, Prudential Reinsurance Company, and Midland Insurance Company (which has been liquidated).

they recovered from the manufacturing defendants, and (2) lawsuits against the manufacturing defendants and their insurers for wrongful refusal to defend and provide coverage. The companion case decided this day involved the Mary Carter recovery. *See* 811 S.W.2d 272. The second fund of escrowed monies is the subject of this appeal.

O'Neal had the following layers of insurance coverage for January 1, 1983 through January 1, 1984:

- primary ———National Union——————$ 500,000 [2]
- first excess——Highlands (appellant)————$10,000,000
- second excess  Hartford————$ 5,000,000
- third excess ——New England group (appellees)  $45,000,000

The same coverage was extended for an additional four-month policy period through May 1, 1984. The primary coverage and the first two levels of excess coverage for the first year have been exhausted, and the New England Group has paid over $20 million in settlement. Highlands says it has paid $3.5 million more than its $10 million policy limits and that this entitles it to be reimbursed before the New England Group, which has paid more than $20 million.

The present appeal involves monies that O'Neal and Highlands recovered from the manufacturing defendants and their insurers for their failure to defend O'Neal and provide it coverage. The funds were placed in escrow, and New England then filed this declaratory judgment action seeking recovery of them.

New England sought summary judgment on three grounds: that it is entitled to the monies based on (1) the express subrogation provisions of the insurance policies involved, (2) contractual and common-law principles, and (3) collateral estoppel. The judgment rests on all three grounds. Because we conclude that the judgment is correct on the first basis—the policy provisions themselves—we need not address the other two.

■ Highlands and New England are excess carriers, and their insurance policies contain subrogation clauses that establish reimbursement priorities. The New England policies included endorsements that adopted the Highlands policy to the extent of conflict, and in any event each policy contained nearly identical subrogation provisions.[3] The Highlands policy establishes three categories of entities that are entitled to subrogation payments and specifies the order in which they share any recovery:

(j) Subrogation. *In case of any payment hereunder, the Company* will act in concert with all *other interests* (including the Insured) concerned, in the exercise of the insured's rights of recovery therefor against any person or organization. The apportioning of any amounts which may be so recovered shall follow the principal [sic] that [1] *any interests* (including the Insured) that shall have paid *an amount over and above any payment hereunder*, shall first be reimbursed up to the amount paid by them; [2] *the Company* is then to be reimbursed out of any balance then remaining up to *the amount paid hereunder;* [3] lastly, *the interests* (including the Insured) *of whom this coverage is in excess* are entitled to claim the residue, if any. [Emphasis added.]

This provision makes a critical distinction between "interests" and "the Company," and it applies to amounts "over and above any payment hereunder." Highlands contends that it is a first-category "interest" that stands ahead of New England because it has paid more than its policy limits. We disagree with that reading of the policy, because Highlands cannot be "the Company" and at the same time be an "interest."

---

**2.** Some of the summary judgment proof shows that this figure should be $1,000,000 per occurrence, $3,000,000 aggregate. Other proof shows that National Union paid only $500,000. For purposes of this appeal, the figure does not matter, because all agree that National Union has paid its policy limits and does not claim the monies involved.

**3.** Prudential's policy, for example, refers to "parties" instead of "interests." Its subrogation provision is identical to the Highlands provision in all other material respects.

Under its own policy, Highlands is clearly "the Company," which has made a payment "hereunder." As "the Company" seeking subrogation monies, its rights are found in clause two. Thus Highlands stands second in line to "interests" (such as New England) that have "paid an amount over and above any payment hereunder" (that is, an amount over and above Highlands' $10 million payment). Because New England has made payments beyond Highlands' $10 million payment "hereunder," it is an "interest" in category one and it stands ahead of Highlands.

■ We hold that New England has rights prior to those of Highlands under the express terms of the insurance policies. The subrogation provision in each policy mandates that among excess carriers those farthest removed from the primary coverage stand first in line when subrogation recoveries are distributed. That is, those who pay last are first to recoup subrogation monies. The provision simply does not contemplate that an insurer might make a voluntary payment beyond its policy limits, which Highlands contends it did in this case.[4]

This construction of the subrogation clause is consistent with the following principle stated by Professor Couch:

> Where the insurers' coverage is in the nature of layers, the excess carrier should recover under subrogation before primary insurers can be reimbursed. One can look at a subrogation recovery as reducing the net loss, in which case the excess carriers would not be obligated to pay the loss.

16 COUCH ON INSURANCE § 61:48, at 133 (2d ed. 1983).

For these reasons, we hold that the trial court correctly ruled that New England is entitled to the monies recovered from the manufacturing defendants. The court also was correct in holding that New England's

policy limits shall be reinstated to the extent of any subrogation payments received, and that it shall reimburse O'Neal for any payments O'Neal makes as a result of Midland's liquidation.

For the reasons stated in the companion case, we reject Highlands' argument that the judgment violates unspecified "principles of equity."

The judgment is affirmed.

---

**4.** Although it is not a factor in our decision, we note that there is no competent summary judgment proof that the $3.5 million that Highlands paid was in excess of its policy limits. Highlands did present affidavit testimony that it had paid $3.5 million "over and above its policy limits." But that statement is a conclusion that assumes there was only one "occurrence" as that term is used in the policy. A conclusion in an affidavit is incompetent to prove a fact or to raise a fact issue in a summary judgment proceeding. *Mercer v. Daoran Corp.,* 676 S.W.2d 580, 583 (Tex.1984).