HIGHLANDS INSURANCE
COMPANY, Appellant,

v.

NEW ENGLAND INSURANCE COMPANY, Landmark Insurance Company, Prudential Reinsurance Company, and O'Neal, Inc., Appellees.

No. 04–90–00231–CV.

Court of Appeals of Texas,
San Antonio.

June 19, 1991.

John Milano, Jr., Susan Stone, Thornton, Summers, Biechlin, Dunham & Brown, Inc., San Antonio, for appellant.

George H. Spencer, James A. Hoffman, Clemens & Spencer, San Antonio, Thomas F. Nye, Brin & Brin, P.C., Corpus Christi, Charles M. McCaghey, Angelo G. Savino, Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for appellee.

Before REEVES, C.J., and PEEPLES and BIERY, JJ.

### OPINION

PEEPLES, Justice.

In this summary judgment appeal, two excess insurance companies—Highlands Insurance Company and a group of insurers referred to as the New England Group [1]—claim monies recovered indirectly by Mary Carter agreements [2] from their insured's co-defendants and their insurance companies. The main issue is whether the insured tortfeasor's first-level excess insurance carrier (Highlands) or its third-level excess carrier (the New England Group) is entitled to the Mary Carter recovery. The second-level insurer, Hartford Accident & Indemnity Company, has not appealed. The trial court rendered summary judgment for New England. We affirm.

The underlying dispute arose in 1983 and 1984 when several plaintiffs brought suit for damages resulting from injuries and deaths caused by a product called E–Ferol, which was manufactured by certain Revco companies and Carter–Glogau Laboratories (the manufacturing defendants) and distributed by O'Neal, Jones & Feldman, Inc. (now O'Neal, Inc.). The manufacturers and their insurers refused to provide a defense for O'Neal, their distributor. Ultimately, O'Neal and its insurers settled with the plaintiffs. Later they recovered some of their settlement payments through two different methods: (1) Mary Carter agreements with the plaintiffs, by which the plaintiffs paid O'Neal part of the damages they recovered from the manufacturing defendants, and (2) lawsuits against the manufacturing defendants and their insurers for wrongful refusal to defend and provide coverage. This appeal involves the first fund of escrowed monies. A companion case, decided this day by a different panel, involves the second fund of money. *See* 811 S.W.2d 276.

O'Neal had the following layers of insurance coverage for January 1, 1983 through January 1, 1984:

1. The New England Group consists of four companies: New England Insurance Company (successor of New England Reinsurance Company), Landmark Insurance Company, Prudential Reinsurance Company, and Midland Insurance Company (which has been liquidated).

2. The agreements bound the plaintiffs to pay O'Neal and its assigns 40% of any recovery from the manufacturing defendants, not to exceed the amount O'Neal and its insurers had paid the plaintiffs in settlement. *See generally General Motors Corp. v. Simmons,* 558 S.W.2d 855 (Tex. 1977).

- primary ——————National Union——————$ 500,000 [3]
- first excess——Highlands (appellant)————$10,000,000
- second excess  Hartford————$ 5,000,000
- third excess ——New England group (appellees)  $45,000,000

The same coverage was extended for an additional four-month policy period through May 1, 1984. The primary coverage and the first two levels of excess coverage for the first year have been exhausted, and the New England Group has paid over $20 million in settlement.

Highlands brought suit for a declaratory judgment, asking that O'Neal be reimbursed for its payments toward settlement, that the court decide which excess carriers are entitled to reimbursement, that New England be denied any reimbursement, and that policy limits be reinstated to the extent that any carrier receives reimbursement. By counterclaim, New England asserted its rights to the money.

New England's motion for summary judgment urged two grounds: (1) that under the provisions of the Highlands insurance policy excess insurers such as New England "should be reimbursed from subrogation recoveries to the extent of their payments for the insured O'Neal prior to any recovery by Highlands," and (2) "pursuant to contractual and common-law principles, [New England is] entitled to be reimbursed for the total amount of the escrowed funds since [New England's] payments of claims against O'Neal exceeded the escrowed amounts."

The court granted New England's motion for summary judgment. The judgment declares (1) that New England is entitled to the escrowed monies, (2) that its policy limits shall be reinstated to the extent that it receives the escrow monies, and (3) that New England shall reimburse O'Neal for any payments O'Neal makes as a result of the liquidation of Midland Insurance Company, a now-defunct member of the New England Group. No one challenges the latter two rulings, which we affirm. Our

question is whether the escrowed monies belong to New England or Highlands.

In the companion case decided today, we have held that the insurance policies give New England subrogation rights that are prior to those of Highlands. See 811 S.W.2d 276. Highlands seeks to sidestep that ruling in several ways. It first argues that New England cannot recover the funds because they were recovered from plaintiffs to whom New England did not pay anything. But the policies do not suggest such a requirement. On the contrary, the policies expressly give New England prior subrogation rights without regard to whether it paid claims to particular plaintiffs.

Highlands next argues that the subrogation clause does not entitle New England to the monies because they were received by assignment, not by subrogation. It is true that the escrowed monies were obtained by Mary Carter agreement, not by traditional subrogation. Plaintiffs recovered damages from the manufacturing defendants and assigned part of their recovery to O'Neal (which assigned it to Highlands). Highlands argues that subrogation is derived from the insured's rights against a third party, and that there can be no subrogation where the funds were recovered from a person against whom the insured has no cause of action. Because O'Neal had no right to sue the plaintiffs, says Highlands, monies received from the plaintiffs do not qualify as a subrogation recovery.

This argument fails for several reasons. It ignores the fact that the plaintiffs recovered the funds from the manufacturing defendants, and if the plaintiffs had not paid O'Neal its share of that recovery, O'Neal could have sued them for it. An insurer can subrogate even though its insured's right of recovery is based on contract. See *Duval County Ranch Co. v. Alamo Lumber Co.*, 663 S.W.2d 627, 636 (Tex.App.—Amarillo 1983, writ ref'd n.r.e.); *Rushing v. International Aviation Un-*

---

**3.** Some of the summary judgment proof shows that this figure should be $1,000,000 per occurrence, $3,000,000 aggregate. Other proof shows that National Union paid only $500,000. For

purposes of this appeal, the figure does not matter because all agree that National Union has paid its policy limits and does not claim the subrogation monies involved.

*derwriters, Inc.*, 604 S.W.2d 239, 244 (Tex. Civ.App.—Dallas 1980, writ ref'd n.r.e.); *F.H. Vahlsing, Inc. v. Hartford Fire Ins. Co.*, 108 S.W.2d 947, 950 (Tex.Civ.App.— San Antonio 1937, writ dism'd). Subrogation is available when the insured's right to recover rests on a Mary Carter agreement.

O'Neal could have sought contribution directly from the manufacturing defendants instead of relying on the plaintiffs to do it. Surely the subrogation character of the recovery is not changed by its detour through the plaintiffs' attorneys' trust accounts. Moreover, the subrogation provision encompasses the rights of O'Neal and its insurers to seek recoupment of insurance payments "against any person or organization." The subrogation provision entitled New England to the escrowed funds even though they were realized by a Mary Carter arrangement.

■ We are told that we cannot interpret the policy itself because the record is incomplete. Highlands says that an endorsement to its policy incorporates the policy of National Union (the primary carrier), which is not included in the record.[4] Highlands suggests that because the National Union policy is not in the record, New England did not prove itself entitled to judgment as a matter of law.

But the Highlands endorsement did not incorporate a *subrogation* provision different from the one contained in the Highlands and New England policies, which are in the record. It dealt with the *scope of coverage*—what risks are insured—and said simply that if there is a loss covered by National Union's policy that would not be covered by the Highlands policy, the terms of the National Union policy will control. There is no suggestion that the insurance policies did not cover tort cases such as these involving E–Ferol, and there-

fore the National Union policy's provisions are not involved in this case, which involves only subrogation.

Highlands also argues that New England is trying to subrogate against itself because one of the manufacturing defendants (Revco) is insured in part by a company (First State Insurance Company) that has the same managing company and same corporate parent as New England. Whatever may be the legal soundness of this proposition, we reject it because the evidence does not raise it. There is no summary judgment proof that First State paid any money on the E–Ferol cases, or that it had primary coverage or a level of excess coverage that was reached, or that it made all or part of the payments that the plaintiffs turned over in part to O'Neal and Highlands under the Mary Carter agreements. Thus there is no proof that New England is subrogating against itself or an affiliate.

■ Highlands concludes by urging that "equitable principles" bar recovery by New England because it is contending in related New York litigation that it has no coverage for the E–Ferol cases. Highlands cites no legal authorities for this proposition and we are aware of none that would apply. *See generally Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848 (Tex.1980) (equitable estoppel; election of remedies). The fact is that New England has paid more than $20 million to settle the underlying cases. The statements in its New York pleading do not somehow estop it from asserting its contractual right to subrogation under the insuring agreements.

For the reasons stated, the judgment is affirmed.

---

4. The Highlands policy contains an "As Broad As Primary" Endorsement, which says:

It is agreed that, in the event of a loss which is insured by an underlying policy [National Union] listed in the Schedule of Underlying Insurance attached to this policy, the excess of which would be insured by this policy except for the terms, conditions and exclusions (other than the exclusions set forth below) of this policy, this policy is amended to follow the terms, conditions and exclusions of the applicable underlying policy [National Union] in respect of such loss, [with the exception of nuclear energy, ERISA, and certain aircraft claims].

This endorsement applies only to *coverage* and has nothing to do with *subrogation*.